Scott, J.
The defendants in this case interpose, as a bar to the relief sought by the complainants, the proceedings of the court of common pleas of Hamilton county, based upon the petition of the administrator of Matthew Benson, the father of complainants, praying for the sale of the real estate in controversy, in order to pay debts, and resulting in a sale to Miller, the original mortgagee, under whom the other defendants claim. This petition was filed in 1832, and the proceedings under it were, therefore, governed by the act of 1831, “defining the duties of executors and administrators.” 3 Chase 1782. The 31st section of that act provides:
“That when the executor or administrator shall apply to the court, under this act, for authority to sell the real estate of his testator or intestate, the application shall be by petition, to which the widow, (if any there be,) and the lawful heir or heirs, or the person or persons, having the next estate of inheritance, of the testator, shall be made defendant thereto, and the defendants shall be served with process, or otherwise notified of the pendency of such petition, in the manner prescribed in the act directing the mode of proceeding in chancery,” etc.
As to tbe mode of serving process, the chancery practice act, here referred to, provides:
“That every subpoena, or process for appearance, shall be served on the person to whom it is issued, or a copy thereof left at his dwelling house or usual place of abode.”
The record, which is offered as a bar in this case, shows affirmatively, that the process for the appearance of the infant defendants was served upon their guardian ad litem, who, in that capacity, acknowledged service for them. And, it being thus shown how they were brought into court, there is no room for the presumption that they were *614 otherwise served with process. Hence the question arises whether, under the act of 1881, the court, without service of process upon the infant defendants personally, or by copy, could acquire jurisdiction of the ease. Eor if the court acted without jurisdiction, the whole proceeding was a nullity; but if jurisdiction was acquired, the order of sale was made in the exercise of a power conferred by law, and the proceedings cannot be collaterally impeached.
In determining this question, it is proper to ascertain, as well as we can, how far it is affected by the previous decisions of this court and its predecessor, and to what extent it still remains an open one.
Prior to 1824, the proceedings by executors and administrators, to subject the real estate of a decedent to the payment of debts, were wholly ex parte. The jurisdiction of the court attached upon the filing of the proper petition. The proceeding was strictly in rem, and no notice was required to be given to the heirs, or other interested parties.
The act of 1824 made no substantial change in the proceedings, except by providing that “ the lawful heir, or the person having the next estate of inheritance of the testator or intestate,” should be made defendant to the petition. In considering the effect of this change in the law, it was said by Judge Hitchcock, delivering the opinion of the court in Robb v. Lessee of Irwin, 15 Ohio Rep. 698 : “ It is apparent that this law leaves the subject-matter of the sale of a decedent’s land, just where.it was before — within the jurisdiction of the court of common pleas, as a court of probate. If before, the proceedings' were in rem, they are still so; for although the law requires the heir to be made a defendant, still there can be no action as against him — no judgment, no decree. The only order which can be made by the court, operates upon the land alone. It may be decreed to be sold.” And in Sheldon v. Newton, 3 Ohio St. Rep. 494, Judge Ranney, with clearness and force, expresses the same opinion, that the proceeding authorized by the act of 1824 was essentially a *615 proceeding in rem, and that an omission to give notice to the heir does not affect the jurisdiction of the court, but goes only to the regularity of the proceeding. These opinions, though they are not conclusive authority, are at least entitled to respect.
In Snevely v. Lowe, 18 Ohio Rep. 368, one of the minor heirs was not even named in the petition, nor elsewhere throughout the proceeding. Two other minor heirs were named in the petition. A guardian ad litem was appointed for the minor heirs of the deceased, without naming any of them; and this guardian, as such, acknowledged an appearance. It was held that the order of sale was not void. "Unless the proceeding be regarded as in rem, it would be difficult, if not impossible, to sustain this decision.
The requirement of notice to the heir does not necessarily imply that such notice is a prerequisite to the acquiring of jurisdiction. On the contrary, it was held in Paine's Lessee v. Mooreland, 15 Ohio Rep. 435, that proceedings in attachment were in rem, and that the seizure of the property attached, gave jurisdiction to the court prior to, and independent of, the notice which the statute imperatively required. And yet, in the former mode of proceeding by attachment, the plaintiff, if successful, recovered a judgment in personam upon a claim which, prior to the seizure and judgment, was no lien upon the property attached.
"Upon whatever grounds the decisions may have been placed, it has uniformly been held that, under the law of 1824, actual notice to the infant heirs was not essential to the jurisdiction of the court. Ewing's Lessee v. Higby, 7 Ohio Rep. (pt. 1) 198; Ewing v. Hollister, Ib. (pt. 2) 138; Robb v. Irwin, 15 Ohio Rep. 689; Lewis v. Lewis’s Adm'r, Ib. 715; Snevely v. Lowe, 18 Ohio Rep. 368; Sheldon’s Lessee v. Newton, 3 Ohio St. Rep. 494. The uniformity of this line of decision was distinctly admitted, and its propriety left unquestioned, in the case of Moore v. Starks, 1 Ohio St. Rep. 369, where the court was careful to distinguish *616 between this class of cases and the proceeding in chancery then under consideration. Yet the act of 1824 directed that the heir should be made a defendant to the petition, and this could, in no fair and substantial sense, be done without notice to him. Indeed, it has never been doubted, that the intention of the law was to give the defendant notice, and afford him a day in court.
These decisions can all be supported, on the ground that the proceedings were still so far in rem, that the want of notice did not affect the jurisdiction of the court; some of them could scarcely be otherwise maintained, upon principle.
But the intrinsic character and nature of the proceeding remained unaffected by the act of 1831. It required notice to the heir, but so did the act of 1824. In addition to this, it prescribed the mode in which the notice should be given; and this was the only change. But the mode of giving notice could not possibly affect the jurisdiction, unless the notice itself were an essential prerequisite; and it is certain that neither of these acts expressly made it so. It is true, that in Lessee of Adams v. Jeffries, 12 Ohio Rep. 253, which was the case of a sale under the act of 1831, it was held that, without notice to the heirs, the whole proceedings were void. But this decision was not based on any difference between the requirements of the act of 1824 and that of 1831. On the contrary, the reasoning and principles upon which it proceeds, are equally applicable to both acts, and were, in fact, so applied by the court. That case, therefore, stands alone, in conflict with both prior and subsequent decisions. But the decision itself might be affirmed without affecting the present case; for the record, in that case, commenced with the order of sale, without showing any petition filed, or other proceedings anterior to the order.
If these were even to be regarded as proceedings in chancery, it has been more than doubted by some of the ablest jurists of whom this state can boast, whether infants *617 may not be made parties to a suit in chancery, so as to be bound by a decree, without personal service, merely hy the appointment and appearance of a guardian ad litem. Judge Hitchcock, in Robb v. Irwin’s Lessee, said: “ I apprehend it will he found, upon examination, that decrees entered under such circumstances are generally, if not universally, holden to be voidable, not void. Such, I have no doubt, is the weight of authority.” And so it was held in Lessee of Nelson v. Moon, 3 McLean’s Rep. 321, decided in this state in 1843. In England, courts of chancery have always exercised a discretion in ordering substituted service, according to the exigencies of the case, upon infant defendants. Smith v. Marshall, 2 Atk. 70; Thompson v. Jones, 8 Ves. 141; Baker v. Holmes, 1 Dickens 18. The chancery practice act of 1831, gave the courts “ power to make rules and regulations for the government of proceedings had before them;” and provided that they should, “ in all things, be governed by the known usages of courts of equity, except where it may be otherwise provided by law.” The act authorized constructive notice by publication, in the case of non-residents, and no one has ever doubted that, under it, service of process might be waived, or an appearance be voluntarily entered. The construction given to this act by the courts, as shown by the early practice under it, prevalent throughout the state, is entitled to consideration and respect. What that practice was is shown by the statement of Judge Grimke, in 1838, in the case of Massie’s heirs v. Donaldson, 8 Ohio Rep. 381. He says: “ In Ohio, it has not been the general practice to make service on the infants. A very loose mode of doing business has universally prevailed. This is greatly to be regretted, since as much mischief might be created by returning to the old and regular practice, as has been occasioned by the original departure from it. The practice of every court may be said, sometimes, to constitute the law of the court; and perhaps even this practice may be entitled to respect, if it is the creature of inveterate usage.”
*618 Rut the petition of an administrator for the sale of land is not a proceeding in chancery; nor have the rules governing courts of chancery ever been rigidly applied to such a proceeding, under the law of 1824. The practice of the courts was known not to be uniform throughout the state, and public policy required that this variant practice should be regarded with indulgence. The interests of heirs required that all reasonable security should be afforded to titles acquired by administrators’ sales, in order that the property might sell for its value. Looking, then, to the character of the proceeding, as at least quasi in rem, to the different modes of practice adopted under the statute regulating it, and governed, doubtless, in a high degree, by considerations of public policy, it has been held, as we have seen, from time to time, both by this court and its predecessor, that irregularities in the mode of effecting the appearance of infant defendants, and even the entire want of notice to them, would not affect the jurisdiction of the court in the case, though it might render the proceedings voidable. Such, at least, are the decisions under the law of 1824, which, as we have seen, required notice, equally with the law of 1831. The proceeding now under consideration was had soon after the statute of 1831 took effect, and before any uniformity of practice had been secured. The statute of 1840, for the first time, made the proof of proper notice to the defendants, a condition precedent to any action of the court in such a case, and prohibited the waiver of notice by a guardian ad litem in behalf of his wards. The statute having been, until that time, silent on the subject, a previous practice to the contrary, in these particulars, would seem to have been thereby recognized and prohibited in the future. Personal service of process was thus made a condition indispensable to the exercise of jurisdiction, and the practice was made uniform throughout the state.
In so far as the proceeding is of an adversary character, that character was given to it, as we have said, by the *619 act of 1824, not by that of 1831. But this court has hitherto refused to say that, under the former act, the want of notice rendered the whole proceeding void. We are now asked to say so. Whatever our opinion might be, if the question were res integra, and admitting, as we do, the just force of the arguments presented by counsel for complainants, yet we must bear in mind, that nearly twenty years have passed since the law of 1831 was superseded. The opinions of this court, and the decisions referred to, have justly been regarded as a rule of property during that time. To disregard those opinions, and overrule the decisions, on the faith of which men have so long acted throughout the state, would produce incalculable hardships. Wholly to disregard such consequences, where the protection of substantial rights demands no such boldness, would evince, on the part of the court, recklessness rather than courage.
Do the facts of this case indicate that substantial wrong and injustice have been done to these complainants ? ' The record and evidence on file show that their father died in 1831, leaving six children, of whom the eldest was under ten years of age. The personal property of his estate amounted to $427, and the sum of $600 was set olf for a years support of the widow and these children. The real estate now in controversy, was under mortgage to secure a debt of $3,000. To discharge this and other liabilities, and provide for the year’s support of the widow and these complainants, her then infant children, it was, of course, necessary to sell real estate. A petition was filed, for that purpose, in 1832, by the administrator. The complainants were all named in it, as the minor children and heirs of the deceased; and for the protection of their rights the court appointed a reputable guardian ad litem,the chosen and trusted attorney of their mother, who was doubtless nominated by her for that purpose. Upon consultation with her, and at her instance, he acknowledged service of a subpcena on behalf of the children. The *620 proper showing having been made, the court ordered a sale. The property was appraised, advertised, and sold; and the whole proceedings were examined, approved, and confirmed by the court. The proceeds of the sale were applied to the support and maintenance of the complainants, and the discharge of the debts, which were a lien upon the property paramount to any title of theirs. All this seems to have been done fairly, and was demanded by the necessities and interests of these complainants. More than a quarter of a century has since elapsed, and this property has largely increased in value; and we are now asked to divest the titles of bona fide purchasers, and declare all these proceedings void, because that which, under the circumstances, could have been but a formal ceremony, was dispensed with. Such a claim is surely strictissimi juris, and can require, at our hands, no deviation from precedent. We think the bill must be dismissed.
• Swan, C. J., and Brinkerhoee, Sutlife and Peck, JJ., concurred.